GILBRIDE, TUSA, LAST & SPELLANE, LLC
Todd. S. Sharinn
31 Brookside Drive
Greenwich, CT 06830
Telephone: (203) 542-8418
Facsimile: (203) 542-8438
todd@gtlslaw.com

*Attorneys for Plaintiff*
*THIS, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

-----------------------------------------------------x

| | | |
|---|---|---|
| THIS, LLC | : | Civil Action No.: 3:15-cv-1606 |
| | : | |
| Plaintiff, | : | **COMPLAINT** |
| | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| | : | |
| JACCARD CORPORATION AND | : | |
| FOX RUN USA, LLC | : | |
| | : | |
| Defendants. | : | |

-----------------------------------------------------x

Plaintiff, THIS, LLC ("TLLC") by and through its attorney, alleges as and for its complaint ("Complaint") against Jaccard Corporation ("Jaccard") and Fox Run USA, LLC d/b/a Fox Run Brands ("Fox Run" and collectively with Jaccard, as "Defendants") as follows:

## NATURE AND BASIS OF ACTION

1.    This is an action for federal trademark counterfeiting, trademark infringement, trade dress infringement, unfair competition, false designation of origin, false advertising, and federal trademark dilution under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et. seq.*, as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 and the Anti-

1

Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-154 (July 2, 1996), copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et. seq.;* unfair competition under Connecticut common law; and under the laws of the State of Connecticut for trademark dilution pursuant to C.G.S.A. § 35-11(i), unfair trade practices pursuant to C.G.S.A. §§ 42-110b *et seq.*; common law unjust enrichment and conversion.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121.

3.     This Court has jurisdiction pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367 over TLLC's claims under the laws of the State of Connecticut in that such claims arise out of the same nucleus of operative facts as the substantial federal law claims to which they are joined.

4.     This Court has personal jurisdiction over Defendants in that they regularly conduct and transact substantial and ongoing business in the State of Connecticut.

5.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b) and (c) in that the defendants are entities subject to personal jurisdiction in this Judicial District.

## THE PARTIES

6.     Plaintiff, TLLC is a limited liability company duly organized and existing under the laws of the State of Connecticut, having a principal place of business at 19 Timber Ridge Road, Madison, Connecticut 06443.

7. Defendant, Jaccard is a corporation organized and existing under the laws of the State of New York, and having a place of business located at 70 Commerce Drive, Rochester, New York 14623.  Upon information and belief, Defendant Jaccard is present in or regularly

conducts and transacts substantial and ongoing business in the State of Connecticut and in this Judicial District. In addition, Defendant Jaccard regularly transacts and conducts business over the Internet through at least one website located on the World Wide Web at the URL <www.jaccard.com> (the "Jaccard Website"), in the State of Connecticut and this Judicial District.

8. Defendant, Fox Run is a limited liability company organized and existing under the laws of the State of Delaware, and having a principal place of business in the Commonwealth of Pennsylvania at 1907 Stout Drive, Ivyland, Pennsylvania 18974. Upon information and belief, Defendant Fox Run is present in or regularly conducts and transacts substantial and ongoing business in the State of Connecticut and in this Judicial District. In addition, Defendant Fox Run regularly transacts and conducts business over the Internet through at least one website located on the World Wide Web at the URL <www.foxrunbrands.com> (the "Fox Run Website" and collectively with the Jaccard Website as, the "Defendant's Web-Sites"), in the State of Connecticut and this Judicial District).

## BACKGROUND FACTS

### TLLC'S BUSINESS

9. For nearly sixteen years (16) and since long prior to the acts of Defendants alleged herein, TLLC has been and is now engaged in manufacturing, distributing, offering for sale and selling unique novelty items, which, among other things, include household utensils, including wooden cooking skewers for roasting food products (*e.g.,* marshmallows or hot dogs) over an open fire or in a fire place (the "TLLC Products") in interstate, intrastate and international commerce under and in connection with its SMORSTIX® trademark.

10. The TLLC Products have been marketed, offered for sale and sold under and in

connection with TLLC's well-known SMORSTIX® trademark (**Exhibit A**) for nearly sixteen (16) years both alone or as a part of kits, which have been marketed, offered for sale and sold under and in connection with TLLC's SMORPAK® trademark for nearly thirteen (13) years. **Exhibit B**.

11.     In addition to four (4) genuine SMORSTIX® branded wooden cooking skewers, TLLC's genuine SMORPAK® kits contain an assortments of brand name high quality food products along with printed instructions sold as a unit for making various types of family friendly snacks.

12.     TLLC's genuine SMORSTIX® branded TLLC Products specifically consists of:

     a.     A package of four (4) 30 inch wooden skewers that TLLC found to be the ideal roasting length; and

     b.     Written recipes and instructions to guide its consumers on the safe, proper and correct use of its goods.

**Exhibit A**.

13.     TLLC has and continues to distribute, market, offer for sale and sell the TLLC Products throughout the United States and around the world through traditional brick and mortar channels of trade and over the Internet through TLLC's operation and maintenance of a website (the "TLLC Web-Site") located on the World Wide Web at the URL <www.smorstix.com> (**Exhibit C**), as well as through authorized third party merchant websites and online stores. **Exhibit D**.

14.     The genuine TLLC Products have been and continue to be sold in many countries around the world and are readily available and sold at, among other places, Kampgrounds Of America, campsites and campground stores, supermarkets, drug stores, convenience markets,

hardware stores, home goods stores, party supply stores, RV supply stores, pool supply stores, candy stores, corn mazes, hotel chains, inns, ski resorts, and at prestigious universities and colleges including, but not limited to Hyatt Hotels, Ritz Carlton Hotels, A&P Supermarkets, Stop & Shop Supermarkets, Whole Foods, Rocky Mountain Chocolate Factory, Grand Lodge Crested Butte, Wegman's, Rite Aid, CVS, Amazon, Bucknell University, Cornell University and George Washington University, among others, regularly offer for sale and sell the TLLC Products.

15.     TLLC created the TLLC Products as a clean, safe and natural alternative to locating sticks available in the wild.  The TLLC Products were conceived of and created by TLLC in an effort to ensure that its customers, particularly families and campers, enjoy the outdoors in a safe, easy and ecologically friendly way.  In fact, TLLC specifically explains on the TLLC Web-Site that "very often, sticks are scarce, dirty, too short, in a patch of poison ivy, or in a thorny briar patch.  Campers often trample underbrush and damage trees and forests in their search." *See* **Exhibit C**.

16.     Throughout TLLC's history and since long prior to the acts of Defendants complained of herein, TLLC created unique and original packaging and labeling, which in the case of TLLC's genuine SMORSTIX® product has been packaged by TLLC, without interruption, in a clear elongated bag containing four (4) 30" wooden skewers with a heavy stock paper fold over label attached at the top of the bag and securing the skewers within (the "TLLC Packaging").  The TLLC Packaging is child friendly, and allows parents to see exactly what they are buying.  **Exhibit E**.

17.     TLLC incorporates in each of its Products and Packaging the same original and distinct design elements and other trade features, which continue to be closely associated with TLLC in the eyes of the public and customers for nearly sixteen (16) years. TLLC has used its

original, ornamental, fanciful and unique graphics, logos, artwork, designs and product configurations (the "TLLC Trade Dress") on and in connection with TLLC's manufacture, distribution, marketing, offering for sale and sale of *all* genuine TLLC Products, which in the case of TLLC's genuine SMORSTIX® product includes bright and warm tones, features toasted marshmallows on sticks and, elicits the feeling of a warm and cozy campfire, and of a fun night with the family. Specifically, all genuine SMORSTIX® products prominently feature the same cartoon like toasted marshmallow on a stick running parallel with TLLC's well-known registered SMORSTIX® trademark along with a second cartoon like toasted marshmallow as they have for TLLC's entire history. **Exhibits A** and **E**.

18.    TLLC's retail customers nearly always prominently offer genuine TLLC Products in TLLC's unique, original and inherently distinctive product display stands (the "TLLC Display"), and have done so throughout TLLC's sixteen (16) year history. The TLLC Display comprises of a cardboard display box with a high back, angular side cutouts partially exposing the genuine SMORSTIX® products orientated and organized therein, and a front portion sized to highlight the full length of the labels of the individual genuine SMORSTIX® products on display therein. The genuine SMORSTIX® products are orientated, organized and arranged side-by-side in four (4) neat rows running the depth of the display.

19.    Like the TLLC Packaging, the TLLC Display includes bright and warm tones, features toasted marshmallows on sticks and, elicits the feeling of a warm and cozy campfire, and of a fun night with the family. Specifically, the TLLC Display prominently features TLLC's well-known cartoon like toasted marshmallow on a stick running parallel with TLLC's well-known registered SMORSTIX® trademark across the top of the display's bottom portion and horizontally along each of the side portions, in addition to additional toasted marshmallows on

sticks drawing a consumer's eye toward TLLC's well-known registered SMORSTIX® trademark across the top of the display's bottom portion. **Exhibit F**.

20. TLLC has marketed, advertised, displayed, offered for sale and sold the TLLC Products using the same TLLC Packaging and Display throughout its entire sixteen (16) year history. Both the TLLC Packaging and Display have featured TLLC's inherently distinctive labeling, graphics, sizes, shapes and overall product configurations. Customers, both wholesale and retail alike, have come to recognize and associate the TLLC Packaging and Display, as well as the inherent TLLC Trade Dress exhibited thereby as originating from TLLC, and as a result the TLLC Packaging and Display have acquired substantial goodwill in addition to serving as valuable source identifiers.

## TLLC'S INTELLECTUAL PROPERTY

21. For many years and since long prior to the acts of Defendants complained of herein, TLLC has been and remains the sole owner of all right, title and interest in and to multiple United States Registered Trademarks, logos, slogans and trade names, which include SMORSTIX®; SMORPAK®; THE PERFECT MARSHMALLOW ROASTING STIX®; EVERYTHING BUT THE CAMPFIRE®; SMORNAMENT®; SMORBOX®; and SMORBAR®.

22. The TLLC Marks (as hereinafter defined) have been continuously and robustly used on and in connection with the advertising, promotion, manufacture, offer for sale and sale of the TLLC Products and in connection with related Packaging and Display in the United States and throughout the world in interstate and intrastate commerce.

23. TLLC is the owner in and to the following United States Trademark Registrations (the "TLLC U.S. Registrations"):

| UNITED STATES REG. NO. | MARK | REG. DATE |
|---|---|---|

| UNITED STATES REG. NO. | MARK | REG. DATE |
|---|---|---|
| 2,453,828 | SMORSTIX | May 22, 2001 |
| 2,698,364 | SMORPAK | March 18, 2003 |
| 2,661,336 | THE PERFECT MARSHMALLOW ROASTING STIX | December 17, 2002 |
| 2,899,136 | EVERYTHING BUT THE CAMPFIRE | November 2, 2004 |
| 4,203,326 | SMORNAMENT | September 4, 2012 |
| 4,032,274 | SMORBOX | September 27, 2011 |
| 4,046,041 | SMORBAR | October 25, 2011 |

Computer printouts of the United States Patent and Trademark Office ("USPTO") records for the TLLC U.S. Registrations are annexed hereto as **Exhibit G**.

24.     The TLLC U.S. Registrations are valid, incontestable, subsisting, unrevoked and uncancelled[1]. Registration of the underlying trademarks constitutes *prima facie* evidence of their validity and conclusive evidence of TLLC's exclusive right to use the TLLC Marks in commerce on and in connection with the goods named in the TLLC U.S. Registrations, and commercially related goods. The TLLC U.S. Registrations also constitute constructive notice to Defendants of TLLC's ownership and exclusive rights in and to the TLLC Marks.

25.     The dates of first use in interstate commerce for the TLLC U.S. Registrations are:

| UNITED STATES REG. NO. | MARK | DATE OF FIRST USE IN COMMERCE |
|---|---|---|
| 2,453,828 | SMORSTIX | July 3, 1999 |
| 2,698,364 | SMORPAK | March 2002 |
| 2,661,336 | THE PERFECT MARSHMALLOW ROASTING STIX | August 17, 1999 |
| 2,899,136 | EVERYTHING BUT THE CAMPFIRE | January 2001 |

---

[1] While SMORNAMENT®, SMORBAR® and SMORBOX® registrations are valid, subsisting, unrevoked and uncancelled, they have not been registered for the statutory period for a presumption that they are incontestable.

| UNITED STATES REG. NO. | MARK | DATE OF FIRST USE IN COMMERCE |
| --- | --- | --- |
| 4,203,326 | SMORNAMENT | April 30, 2011 |
| 4,032,274 | SMORBOX | May 27, 2011 |
| 4,046,041 | SMORBAR | June 2, 2011 |

26.   TLLC is also the owner in and to the following International Trademark Registrations (the "TLLC Int'l Registrations" and collectively with the TLLC U.S. Registrations as the "TLLC Marks"):

| COUNTRY | MARK | REGISTRATION NUMBER |
| --- | --- | --- |
| CANADA | SMORPAK | 722618 |
| CANADA | SMORBOX | 857306 |
| CANADA | SMORSTIX | 722597 |
| COMMUNITY TRADEMARK | SMORSTIX | 005 222 120 |
| COMMUNITY TRADEMARK | SMORPAK | 005 205 745 |
| MEXICO | SMORPAK | 973523 973520 |
| MEXICO | SMORSTIX | 973522 373521 |
| MEXICO | SMORBOX | 1193762 |

27.   Moreover, all TLLC Products and their associated Packaging and Display contain proprietary, original and ornamentally unique works, which constitute copyrightable subject matter pursuant to 17 U.S.C. §102(a) (the "TLLC Copyright").

28.   The TLLC Copyright has been  registered with the United States Copyright Office ("USCO") and designated copyright Registration Number VA-0001687117,  since June 5, 2008, and is valid and subsisting.  The TLLC Copyright is directed to certain of the original graphics included on the TLLC Packaging and Display. **Exhibit H**.

29.   TLLC is the sole owner of all right, title and interest in and to the TLLC

Copyright, and the copyrights to the original works depicted on the TLLC Packaging and Display, as provided by the Copyright Laws.

30.     TLLC has also used, among others, the tradename "SMORSTIX" since at least 1999 (the "TLLC Tradename", and collectively with the TLLC Marks, Trade Dress and Copyright as the "TLLC IP").

31.     For many years and since long prior to the acts of Defendants complained of herein, TLLC has and continues to expend substantial efforts, resources and funds to establish and market the TLLC IP, Products, Packaging and Display, the related goods and services and the abundant associated goodwill, by utilizing targeted trade and promotional literature, direct marketing, word of mouth and the creation and maintenance of the TLLC Web-Site, which includes an online store.

32.     TLLC Products have been discussed, broadcast and positively reviewed in various media, including The Food Network and the National Marshmallow Roasters Institute's webpage. *See* the relevant pages of these websites annexed hereto as **Exhibit I**.

33.     In addition, the development of strong and lasting customer relationships has been a hallmark of TLLC. TLLC has fostered strong and lasting relationships based upon trust and integrity.  As a direct and proximate result of TLLC's efforts to develop and maintain strong and lasting consumer relationships and TLLC's continuous robust promotion of the TLLC Products, Packaging and Display under and in connection with the TLLC IP, TLLC and the TLLC IP have become a safe and reliable source identifiers and acquired substantial good will and an excellent reputation in the industry that rises to the level of being famous.

34.     In its nearly sixteen (16) year history, TLLC has never had a single consumer complaint or any concern or issue raised by a governmental agency regulating consumer safety

or otherwise.

35.     As a result of TLLC's efforts and of TLLC's continuous and extensive use of the TLLC IP, the TLLC IP, Products, Packaging and Display have acquired substantial goodwill and value as source identifiers of TLLC and the related goods and services TLLC provides.

36.     The trade and public have come to associate the TLLC IP, Products, Packing and Display exclusively with TLLC as a result of:

a.     TLLC's extensive advertising and promotion of the TLLC Products;

b.     The strong and long standing client consumer relationships and concomitant word-of mouth publicity engendered by the TLLC IP and the TLLC Products, Packaging and Display;

c.     The care and skill exercised by TLLC in the provision of its goods offered under and in connection with the TLLC IP;

d.     The uniform high quality of the TLLC Products, Packaging and Display provided under and in connection with the TLLC IP; and

e.     The trade and public's acceptance of the TLLC IP, Packaging and Display as symbols of valuable and inestimable goodwill.

37.     TLLC marks each TLLC Product and their associated TLLC Packaging and Displays, as well as all relevant marketing materials, in accordance with and subject to the relevant United States Trademark and Copyright Laws and most particularly 15 U.S.C. § 1111 and 17 U.S.C. § 401 respectively, which constitutes actual and constructive notice to Defendants of TLLC's ownership in and to the TLLC IP used on, in or in connection with TLLC's manufacture, distribution, marketing, offering for sale and sale of the TLLC Products.

## DEFENDANTS' INFRINGING ACTS

38.     Upon information and belief, Defendants cooperate in the business of

manufacturing, distributing, marketing, offering for sale and selling home, kitchen and recreational specialty products on both a national and international level.

39.     Long after TLLC's creation, selection, adoption, use and marketing of the TLLC IP, Products, Packaging and Display, Defendants, without authorization or license from TLLC, have and continue to knowingly and willfully manufacture, distribute, market, offer for sale and sell counterfeit and infringing packaged wooden skewers:

  a. Having identical dimensions and configurations to those of the TLLC Products (the "Infringing Products") **Exhibit J**;

  b. Under the confusingly similar names "S'MORESFIRESTIX" and "S'MORESGLOSTIX" (the "Infringing Names"), and in connection with colorable imitations and confusingly similar copies of TLLC's logos, artwork and graphics (the "Infringing Designs") **Exhibit J**; and

  c. Relying upon product labels, packaging and displays virtually identical to the TLLC Packaging and Displays (the "Infringing Packaging" and collectively with the Infringing Products, Names and Designs as, the "Infringing Products"), nationally, internationally, and in interstate and intrastate commerce, including commerce in the State of Connecticut and this Judicial District. **Exhibit J**.

40.     Defendants, without authorization or license from TLLC, have knowingly and willfully used and continue to use the TLLC IP on, in and in connection with Defendants' advertisement, offer for sale and sale of the Infringing Products, through traditional brick and mortar channels of trade and their operation and maintenance of the Defendant's Web-Sites. **Exhibits K** and **L**.

41.     Defendants cause confusion and deceive the public by combining the same fanciful terms "SMOR" and "STIX" as those present in TLLC's longtime registered SMORSTIX® trademark for use on and in connection with identical goods, packaging and displays to those originating with TLLC.

42.     Defendants' unlawfully place of the "®" symbol directly adjacent to the Infringing Names in furtherance of their willful, illegal and illicit counterfeiting of the TLLC IP, Products, Packaging and Display. In fact, Defendant Jaccard never filed a single application attempting to register any of the Infringing Names with the USPTO or the Infringing Designs with the USCO.

43.     Instead, on May 5, and 19, 2015, long after receiving written notice of TLLC's prior existing rights, Defendant Jaccard filed applications with the USPTO to register the terms "GLOSTIX" and "FIRESTIX", respectively, each for use on and in connection with the sale of "Cooking skewers." **Exhibits M** and **N**.

44.     Defendant Jaccard's currently pending GLOSTIX trademark application asserts a date of first use of January 1, 2015 (**Exhibit M**), while its pending FIRESTIX trademark application was filed on the basis of an intent to use. **Exhibit N**. Notwithstanding either of these applications and the sworn statements made by Defendant Jaccard to the USPTO in support thereof, Defendants do not offer a single product under or in connection with either of these marks - - instead remaining true to their continued unauthorized use of the Infringing Names.

45.     In addition to the Infringing Names' confusingly similar appearance, sound, connotation and commercial impression to those of TLLC's longtime registered SMORSTIX® trademark, Defendants' Infringing Designs use suggestive and colorable imitations of the works that are the subject of the TLLC IP. Specifically, like TLLC has done for nearly sixteen (16)

years, Defendants rely on the integration of confusingly similar names and copies TLLC's copyrighted artwork, which includes a toasting marshmallow on a stick running parallel with the Infringing Names on the Infringing Products' labels and images of toasting marshmallows both on and off sticks drawing attention to the Infringing Name on the Infringing Packaging. *Compare* **Exhibits E**, **F, and J**.

46. Also highlighted by a comparison of **Exhibits E** and **J,** are the facts that Defendants' Infringing Products and Packaging are of the same shape, size and overall configuration to that of their genuine TLLC Products, Packaging and Display.

47. Like the genuine TLLC Packaging, the Defendants' Infringing Packaging consists of a clear plastic elongated bag containing four (4) wooden skewers with a heavy stock paper fold over label deliberately and prominently displaying counterfeit copies of the TLLC IP attached at the top of the bag and securing four (4) skewers within. Adding to the likelihood of confusion, both the genuine individual SMORSTIX® packages and the Infringing Products are displayed in neatly arranged rows, four (4) across, in a cardboard floor display box, which like the genuine TLLC Display has a high back, angular side cutouts partially exposing the products organized therein, and a front portion running from both the bottom of the labels of the products on display therein. Adding insult to injury, Defendants' display box, like the TLLC Display, is not only constructed with the same shape, style and overall appearance; Defendants orientate the Infringing Products, Names and Designs in a virtually identical orientation to that found on TLLC's genuine. *Compare* **Exhibit F** and **J**.

48. TLLC first learned on or about March 10, 2015, of Defendant Jaccard's offering for sale and sale of the Infringing Products when a TLLC sales representative stumbled upon the same at the 2015 International Home Housewares Show at McCormick Place, Chicago (the

"Event"). In fact, Defendant Jaccard prominently showcased multiple floor displays of the Infringing Products at the entrance and within their booth at the Event. **Exhibit O**.

49.     The Event, which is hailed to be the world's largest home goods and housewares tradeshow, attracted approximately sixty thousand (60,000) people from all over the world looking for new products and business opportunities. **Exhibit P**.

50.     Subsequent to the Event, TLLC conducted an investigation and located Defendants' Infringing Products on the Internet on, among other websites, the Defendant's Web-Sites, as well as on the websites of third party merchants. **Exhibit K, L**, and **Q**.

51.     Following TLLC's reasonable inquiry, Defendants were placed on notice on April 23, 2015, within weeks of Defendant Jaccard's first known public introduction of the Infringing Products through cease and desist letters (the "C&D Letters") sent by TLLC's counsel, Gilbride, Tusa, Last & Spellane, LLC ("GTLS"). The C&D Letters, based on TLLC's reasonable investigation and belief that the Infringing Products' are illicit and illegal, demanded that the Defendants immediately "[c]ease and desist any and all use of the TLLC IP or any confusingly similar marks, logos, names or unauthorized derivatives thereof on or in connection with the manufacture, marketing, distribution, offer for sale or sale of the Infringing Products in the United States, Canada and throughout the world." **Exhibit R**.

52.     On April 24, 2015, Defendant Fox Run's CEO Sean Leonard contacted GTLS asking to discuss an amicable resolution of the allegations set forth in the C&D Letters.

53.     Despite GTLS returning Mr. Leonard's call and leaving two messages first on the afternoon of April 24, 2015, and next on the morning of April 27, 2015, Mr. Leonard never contacted GTLS again.

54.     On April 27, 2015, two (2) business days after the Defendants received the C&D

Letters and three (3) business days before any action demanded of the Defendants was required, Jaccard ran to its local courthouse without any notice or prior communication and filed a Declaratory Judgment Complaint with the District Court of the Western District of New York (the "DJC") seeking a judgment of non-infringement. **Exhibit S**.

55.     The DJC fails to reference Defendant Fox Run.

56.     Defendant Jaccard's counsel, Bond, Schoeneck and King, PLLC ("BSK") emailed GTLS on April 28, 2015, confirming their representation of Defendant Jaccard and receipt of the C&D Letters, as well as expressing an interest "to discuss this matter…at your convenience." BSK's email did not reference the DJC. **Exhibit T**.

57.     On April 29, 2015,  GTLS and BSK had a brief telephone conversation during which they discussed the potential for settlement. During this telephone conversation, GTLS first learned of the DJC from BSK.  Subsequent to the telephone conversation, BSK emailed GTLS a courtesy copy of the DJC. **Exhibit T**.

58.     GTLS sent a letter to BSK on May 1, 2015, (the "May 1 Letter") demanding that Defendant Jaccard withdraw the DJC, demonstrating that the DJC is a product of fabrication, filed in haste, and the result of Defendant Jaccard's failure to conduct the requisite good faith, objective and reasonable inquiry into the facts and law or the viability of the claims they advanced. **Exhibit U**.

59.     Defendant Jaccard admits through the DJC that it first introduced the disputed products and packaging into the marketplace only approximately one month prior to receiving the C&D Letters.  However, the DJC completely ignores the facts that TLLC's products, packaging and registered trademarks have a sixteen (16) year history, all of which has acquired good will and notoriety with the public and within the relevant marketplace. **Exhibit S**.

60. On May 6, 2015, BSK emailed a response (the "May 6 Response") to the May 1 Letter, confirming, among other things, Defendant Jaccard's "willing[ness] to discuss an amicable resolution of this dispute." **Exhibit V**.

61. Defendant Jaccard's President (on behalf of both Defendants) and TLLC's Managing Member communicated directly in an effort to resolve this matter without the need of protracted litigation. In fact, in order to expedite settlement discussions between the parties, the parties negotiated and executed a Non-Disclosure Agreement ("NDA"), under which TLLC provided certain proprietary information deemed necessary by Defendant Jaccard.

62. TLLC repeatedly demanded that Defendant Jaccard withdraw the DJC, and that Defendants cease and desist from any further manufacturing, distributing, making, offering for sale and selling of the Infringing Products. Despite Defendant's representations of a desire for an amicable resolution, they continue to manufacture, distribute, market, offer for sale and sell the Infringing Products.

63. Defendants' use of the Infringing Names on or in connection with Defendants' unauthorized Infringing Products can only result in further harm to TLLC's reputation and goodwill.

64. Defendants are not and have never been authorized to manufacture, distribute, market, offer for sale or sell the Infringing Products s under or in connection with counterfeit and infringing copies of the TLLC IP or otherwise.

65. The Infringing Products are not genuine TLLC Products. TLLC did not manufacture, inspect or package the Infringing Products, and did not approve the Infringing Products for sale and/or distribution.

66. The Infringing Products, which are offered under and in connection with the

Infringing Names, are advertised, promoted, offered for sale and sold to the same consumers and clients in the same channels of trade that TLLC markets the TLLC Products in and to.

67.     Upon information and belief, Defendants have deceptively contacted TLLC customers in an effort to promote the Infringing Products by unfairly trading on TLLC's good will and reputation.

68.     The long term damage to TLLC's business is impossible to determine at this point. However, unless and until Defendants are stopped, TLLC and the TLLC IP and their associated valuable goodwill will continue to suffer irreparable harm.

## COUNT ONE

## FEDERAL TRADEMARK COUNTERFEITING and INFRINGEMENT (15 U.S.C. § 1114)

69.     TLLC repeats and realleges each and every allegations of contained in 1 through 68 of this Complaint as if fully set forth herein.

70.     The TLLC Marks and the goodwill of the businesses associated with them in the United States and throughout the World are of great and incalculable value, are highly distinctive and arbitrary, and have become universally associated in the public's mind with products and goods of the very highest quality and reputation finding their source in TLLC.

71.     Without TLLC's authorization or consent, and having knowledge of TLLC's well-known and prior rights in and to the TLLC Marks, Defendants have promoted, distributed, offered for sale and/or sold the Infringing Products under and in connection with the Infringing Names and Labels to the consuming public in direct competition with TLLC's use of the TLLC Marks, in or affecting interstate commerce.

72.     Defendant's Infringing Products appear to an ordinary consumer identical with, or

18

substantially indistinguishable from the TLLC Products.

73.     Defendants' use of copies or simulations of the TLLC Marks is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive the public into believing the Infringing Products being sold by Defendants originate from, are associated with, or are otherwise authorized by TLLC all to the damage and detriment of TLLC's reputation, goodwill and sales.

74.     TLLC has no control over the quality of Defendant's infringing and counterfeit merchandise. Because of the high likelihood of confusion as to the source of Defendant's Infringing Products, TLLC's reputation and valuable goodwill in the TLLC Marks are at the mercy of Defendant's willful and unscrupulous tactics.

75.     TLLC has been and continues to be, damaged by Defendant's manufacture, distribution, marketing, offering for sale and/or sale of the Infringing Products.

76.     TLLC has no adequate remedy at law and, if Defendants' activities are not immediately enjoined, TLLC will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT TWO

## TRADE DRESS INFRINGEMENT
## (15 U.S.C. § 1114)

77.     TLLC repeats and realleges paragraphs 1 through 76 of this Complaint as it fully set forth herein.

78.     The TLLC Trade Dress is highly distinctive and arbitrary, and has become universally associated in the public mind with the products and services of the very highest quality and reputation finding its source in TLLC.

79.     The TLLC Trade Dress in the TLLC Products, Packaging and Display is

inherently distinctive.

80.    The TLLC Trade Dress has acquired secondary meaning in the marketplace in that consumers associate the TLLC Trade Dress with a single source of origin, and they are likely to make the same association when the same TLLC Trade Dress is used on another manufacturer's product.

81.    The TLLC Trade Dress is non-functional.

82.    The TLLC Trade Dress and the goodwill of the business associated with it in the United States and throughout the world are of great incalculable value.

83.    Defendants intentionally copied the TLLC Trade Dress of the TLLC Products, Packaging and Displays.

84.    Defendants' manufacturing, advertising, distribution, offering for sale and selling the Infringing Products that have, rely upon and use confusingly similar product packaging and displays to the TLLC Trade Dress are likely to cause confusion on the part of consumers and potential consumers, in violation of the Lanham Act §32(a)(1)(A), 15 U.S.C. §1125(a)(1)(A).

85.    Defendants' manufacturing, advertising, distribution, marketing, offering for sale and sale of the Infringing Products has and continues to result in irreparable harm and injury to TLLC. Among other harms, these acts deprive TLLC of their absolute right to determine the manner in which their image is presented to the general public through merchandising; deceive the public as to the origin and sponsorship of the Infringing Products; wrongfully trade upon TLLC's reputation and exclusive rights to the TLLC Trade Dress; and, to the extent that the Infringing Products are of inferior quality, lessen consumers' perception of the quality of all genuine TLLC Products.

86.    Injury to TLLC's goodwill and reputation, and Defendants' infringement will

continue unless enjoined by this Court, as TLLC lacks an adequate remedy at law.

## COUNT THREE

## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

87.     TLLC repeats and realleges the allegations of paragraphs 1 through 86 of this Complaint as if fully set forth herein.

88.     The Infringing Products sold and offered for sale by Defendants are of the same general nature and type as the genuine TLLC Products sold and offered for sale by TLLC and, as such, Defendants' use of the TLLC IP is likely to cause confusion to the general purchasing public.

89.     By misappropriating and using the TLLC IP, Defendants misrepresent and falsely describe to the general pubic the origin and source of the Infringing Products and create a likelihood of confusion to ultimate purchasers as to both the source and sponsorship of such goods.

90.     Defendants' unlawful, unauthorized and unlicensed promotion, distribution, offer for sale and/or sale of the Infringing Products create express and implied misrepresentations that the Infringing Products were created, authorized or approved by TLLC, all to Defendants' profit and TLLC's great damage and injury.

91.     Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the TLLC IP, on and in connection with their Infringing Products, in interstate, intrastate and international commerce constitutes a false designation of origin and unfair competition throughout the United States, in the State of Connecticut and in this Judicial District.

92. TLLC has no adequate remedy at law and, if the Defendants' activities are not enjoined immediately, TLLC will continue to suffer irreparable harm and injury to its business, goodwill and reputation.

## COUNT FOUR

## FEDERAL TRADEMARK DILUTION
## (15 U.S.C. § 1125 (C))

93. TLLC repeats and realleges the allegations of paragraphs 1 through 92 of this Complaint as if fully set forth herein.

94. The TLLC Marks are "famous marks" within the meaning of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)(1), and have been famous marks prior to Defendants' conduct as alleged herein.

95. Defendants' promotion, distribution, sale and/or offer for sale in commerce of the Infringing Products dilute the distinctive quality of the TLLC Marks, and was done with the willful intent to trade on TLLC's reputation and/or to cause dilution of the TLLC Marks.

96. Defendants' unauthorized use of the TLLC Marks on or in connection with the Infringing Products was done with notice and full knowledge that such promotion, distribution, sale and/or offer for sale was not authorized or licensed by TLLC.

97. Defendants' aforesaid acts are in knowing and willful violation of TLLC's rights under section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

98. TLLC has no adequate remedy at law and, if Defendants' activities are not enjoined, will continue to suffer irreparable harm and injury to TLLC's goodwill and reputation.

99. As a result of Defendants' activities, TLLC has been damaged in an amount to be ascertained, but no less than $1,000,000.00.

## COUNT FIVE

## FEDERAL COPYRIGHT INFRINGEMENT
### (17 U.S.C. § 501 *et seq.*)

100.    TLLC repeats and realleges the allegations of paragraphs 1 through 99 of this Complaint as if fully set forth herein.

101.    Without TLLC's authorization or consent and despite having knowledge of TLLC's well-known and prior rights in and to the TLLC Copyright, Defendants have infringed TLLC's federal and common law copyrights in and to the TLLC Copyright through their manufacture, distribution, marketing, offering for sale and/or sale of the Infringing Products.

102.    Defendants' infringement of TLLC Copyright has deprived TLLC of the opportunity to recognize compensation for its efforts in creating and commercializing the TLLC Copyright for the full and unfettered enjoyment of the goodwill that continues to grow as a result of TLLC's tremendous commitment of time and resources to the development, maintenance and regulation of the valuable TLLC Copyright.

103.    TLLC has no adequate remedy at law  and if Defendants' infringing activities are not enjoined, TLLC will continue to suffer irreparable harm and injury to its goodwill and reputation, and to sustain lost profits.

## COUNT SIX

## COMMON LAW TRADEMARK AND TRADE NAME INFRINGEMENT

104.    TLLC repeats and realleges the allegations of paragraphs 1 through 103 of this Complaint as if fully set forth herein.

105.    TLLC has built up valuable goodwill in the TLLC Marks and Tradename.

106.    With full knowledge of the fame of the TLLC Marks and trade names, Defendants trade on the goodwill associated with the TLLC Marks and Tradename, and mislead the public

into assuming a connection between the Infringing Products and TLLC.

107. Defendants' unauthorized use of the TLLC Marks and Trade Name on and in connection with their manufacture, distribution, marketing, offering for sale and sale of the Infringing Products is likely to and does permit Defendants to pass off the Infringing Products to the general public as those of TLLC, all to the detriment of TLLC and the unjust enrichment of Defendants.

108. Defendants' acts of trademark and trade name infringement have caused and continue to cause confusion and to mislead and deceive the public as to the source of Defendants' Infringing Products, permit Defendants to pass off the Infringing Products as the TLLC Products, and falsely suggests a connection between Defendants and TLLC and will continue to do so, in violation of the common law of the State of Connecticut.

109. Defendants' acts of trademark and/or trade name infringement have caused and will continue to cause TLLC irreparable harm unless restrained by this Court. TLLC has no adequate remedy at law.

## COUNT SEVEN

## CONNECTICUT TRADEMARK DILUTION
## (C.G.S.A. § 35-11 i (a))

110. TLLC repeats and realleges paragraphs 1 through 109 of this Complaint as if fully set forth herein.

111. Defendants, upon information and belief, and with full knowledge of the fame of the TLLC Marks, intended to and did trade on the goodwill associated with the TLLC Marks and have misled and will continue to mislead the public into assuming a connection between TLLC and Defendants by Defendants' unlawful marketing, distribution and/or sale of the Infringing Products.

112. Defendants' acts have caused damage to TLLC by tarnishing TLLC's valuable reputation and diluting or blurring the distinctiveness of the TLLC Marks in violation of Connecticut General Statutes Annotated § 35-11i(a), and will continue to tarnish and destroy the value of the TLLC Marks unless enjoined by this Court.

113. TLLC has no adequate remedy at law.

## COUNT EIGHT

## UNFAIR TRADE PRACTICES AND UNLAWFUL DECEPTIVE ACTS AND PRACTICES
## (C.G.S.A. § 42-110 b (a))

114. TLLC repeats and realleges paragraphs 1 through 113 of this Complaint as if fully set forth herein.

115. Defendants, without TLLC's authorization or consent, and having knowledge of TLLC's well-known and prior rights in the TLLC IP and the fact that Defendants' Infringing Products are confusingly similar to and rely upon unauthorized copies of the TLLC IP, have marketed, distributed, offered for sale and/or sold Infringing Products to the consuming public in direct competition with TLLC's sale of the genuine TLLC Products.

116. The aforesaid acts of Defendants constitute unfair methods of competition and unfair practices in the conduct of commerce and are likely to cause injury to TLLC's intellectual property, business reputation, the TLLC Marks and other valuable goodwill associated with the TLLC IP at no cost to Defendants, and in violation of Connecticut's Unfair Trade Practices Act, Connecticut General Statute § 42-110b(a).

117. The conduct of Defendants has injured TLLC and TLLC has suffered damages in an amount that cannot yet be readily ascertained.

## COUNT NINE

## COMMON LAW UNFAIR COMPETITION UNDER
## THE LAWS OF THE STATE OF CONNECTICUT

118. TLLC repeats and realleges the allegations of paragraphs 1 through 117 of this Complaint as if fully set forth herein.

119. TLLC has built up valuable goodwill in the TLLC IP and the distinctive genuine TLLC Products, Packaging and Display.

120. The aforesaid acts of Defendants constitute misappropriation of labor, intellectual property, business reputation, the TLLC IP and other valuable goodwill associated therewith, at no cost to Defendants, and result in Defendants unfairly benefiting from the same all in violation of the common law of the State of Connecticut.

121. Defendants' unauthorized use of the TLLC IP has caused and is likely to continue to cause TLLC damage by tarnishing the valuable reputation and image associated with TLLC and the genuine TLLC Products. Defendants have further palmed off the Infringing Products as genuine TLLC Products by Defendants' false labeling and misrepresentations to the consuming public, members of whom are likely to and do believe the Infringing Products emanate from, are endorsed by, or are associated with TLLC.

122. The acts of Defendants permit and accomplish confusion, mislead, dupe and deceive the public as to the source of the Infringing Products, permit and accomplish palming off of the Infringing Products as those of TLLC's and falsely suggest a connection with TLLC. These acts constitute unfair competition with TLLC in violation of the laws of the State of Connecticut.

123. Defendants' acts have caused and will continue to cause TLLC irreparable harm to its business, the TLLC IP, reputation, intellectual property and the goodwill associated

26

therewith unless enjoined by this Court.

124.    TLLC has no adequate remedy at law.

## COUNT TEN

## COMMON LAW UNJUST ENRICHMENT UNDER THE LAWS OF THE STATE OF CONNECTICUT

125.    TLLC repeats and realleges paragraphs 1 through 124 of this Complaint as if fully set forth herein.

126.    TLLC has built up valuable goodwill in and to the TLLC Marks and the distinctive appearance of the TLLC Products, Packaging and Display. Defendants' use of the TLLC IP, Packaging and Display are likely to and does permit Defendants to palm off the Infringing Products as those of TLLC, all to the detriment of TLLC and the unjust enrichment of Defendants.

127.    The aforesaid acts of Defendants constitute misappropriation of labor, intellectual property, business reputation, the TLLC IP and other valuable goodwill associated therewith, at no cost to Defendants, and result in Defendants unfairly benefiting from the same all in violation of the common law of the State of Connecticut.

128.    Defendants' unauthorized use of the TLLC IP has caused and is likely to continue to cause TLLC damage by tarnishing the valuable reputation and image associated with TLLC and the genuine TLLC Products. Defendants have further palmed off the Infringing Products as genuine TLLC Products by Defendants' false labeling and misrepresentations to the consuming public, members of whom are likely to and do believe the Infringing Products emanate from, are endorsed by, or are associated with TLLC.

129.    The aforesaid acts of Defendants are unjustly enriching Defendants. Additionally,

the acts of Defendants permit and accomplish confusion, mislead, dupe and deceive the public as to the source of the Infringing Products, permit and accomplish palming off of the Infringing Products as those of TLLC's and falsely suggest a connection with TLLC. These acts constitute unfair competition with TLLC in violation of the laws of the State of Connecticut.

130.    The conduct of Defendants have caused and continue to cause irreparable injury to TLLC.

131.    TLLC has been damaged and continues to be damaged as a result of the foregoing actions of Defendants in an amount that cannot yet be determined.

## COUNT ELEVEN

## CONVERSION

132.    TLLC repeats and realleges paragraphs 1 through 131 of this Complaint as if fully set forth herein.

133.    Defendants have used, and continue to use, the TLLC IP on and in connection with the manufacture, marketing, distribution, offer for sale, and sale of the Infringing Products and have pirated the TLLC IP and the valuable goodwill associated therewith and thereby converted the TLLC IP and associated goodwill to their use.

134.    The conduct of Defendants has irreparably injured TLLC. TLLC has been damaged, and continues to be damaged, as a result of the foregoing actions of Defendants in an amount that cannot yet be readily ascertained.

**WHEREFORE**, TLLC demands judgment:

135.    That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through or under them be preliminarily enjoined and restrained, at first during the pendency of this action and, thereafter, permanently

enjoined:

    (a)    from using in any manner the TLLC IP, alone or in combination with any word or words which so resemble each said trademark as to be likely to cause confusion, deception, or mistake on or in connection with the advertising, offering for sale, or sale of any product or service not TLLC's, or not authorized by TLLC to be sold in connection with each of the TLLC IP;

    (b)    from passing off, inducing, or enabling others to sell or pass off any product or service as and for products or services produced by TLLC, not TLLC's, or not produced or rendered under the control and supervision of TLLC and approved by TLLC for sale under the TLLC Marks;

    (c)    from committing any acts calculated to cause purchasers to believe that Defendants' products or services are those sold under the control and supervision of TLLC, or sponsored or approved by, or connected with, or guaranteed by, or produced under the control and supervision of TLLC;

    (d)    from further diluting and infringing all TLLC Marks and intellectual property and damaging TLLC's goodwill;

    (e)    from otherwise competing unfairly with TLLC in any manner; and

    (f)    from delivering, distributing, returning or otherwise disposing of, in any manner, products or services not approved by or for TLLC, nor authorized by TLLC to be sold or offered for sale, and which bear or otherwise incorporate or rely upon any or all of the TLLC IP.

136.    That Defendants be required upon service of this Complaint to immediately deliver up to TLLC any copies, or originals for copy, of any and all Infringing Products, guarantees, circulars, price lists, labels, signs, prints, packages, wrappers, pouches, receptacles, advertising matter, promotional, and other materials in the possession of Defendants or under their control bearing any of the TLLC IP, or each of them, alone or in combination with any other words, or used in connection with the advertising, offering for sale or sale of products or services not TLLC's, or not made under the authorization and control of TLLC.

137.    That Defendants be required upon service of this Complaint to immediately supply TLLC with a complete list of entities from whom they purchased and to whom they

distributed, sold, and/or attempted in any way to distribute or sell products or services falsely bearing the TLLC Marks or products not authorized by TLLC to be sold in connection with each of said IP.

138. That Defendants be required upon service of this Complaint to immediately deliver up for destruction their entire inventory of the Infringing Products bearing any of the Infringing Names.

139. That Defendants, within thirty (30) days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon TLLC a written report under oath setting forth in detail the manner in which Defendants have complied with paragraphs 135 to 138 hereof.

140. That Defendants account for and pay over to TLLC profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and, that the amount of damages for infringement of the TLLC registered trademarks be increased by a sum not exceeding three times the amount thereof as provided by law.

141. That TLLC be awarded actual damages of $2,000,000.00 and punitive damages in the amount of $1,000,000.00, as well as treble damages for Defendants' willful conduct.

142. TLLC be awarded statutory damages in the amount of $2,000,000.00 for Defendant's willful counterfeiting of the TLLC Marks.

143. That TLLC be awarded reasonable attorney's fees and have such other and further relief as the Court may deem equitable including, but not limited to, any relief set forth under Sections 34-39 of the 1946 Trademark Act or C.G.S.A. §§ 35-11(i), 42-110(a) *et seq.*, 42-110(b) *et seq.*

144. That TLLC be awarded damages and profits adequate to compensate TLLC for

Defendant's infringement of TLLC Copyright, together with prejudgment and post-judgment interest, pursuant to 17 U.S.C. §504 (b); or in the alternative statutory damages pursuant to 17 U.S.C. §504 (c) in the amount of $750,000.00 for Defendant's willful counterfeiting of the TLLC Copyright; and full costs and reasonable attorney's fees pursuant to 17 U.S.C. §505.

145.    That Defendants pay exemplary or punitive damages to TLLC due to Defendant's willful and intentional acts in violation of TLLC's rights and Defendant's false representations to and deception of the public to foster the belief that the Infringing Products are those of TLLC.

146.    Such other and further relief as the Court deems to be reasonable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule 38(b), TLLC hereby demands a jury trial on all issues so triable that are raised by this Complaint.

Dated: November 4, 2015

Respectfully submitted,

GILBRIDE, TUSA, LAST & SPELLANE LLC

By: _____
Todd S. Sharinn, Esq.
Gilbride, Tusa, Last & Spellane LLC
31 Brookside Drive
Greenwich, CT 06830
(203) 542-8418

*Attorneys for Plaintiff*
*This, LLC*