UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THIS, LLC,<br>　　*Plaintiff*,<br>　　*v.*<br>JACCARD CORP.,<br>　　*Defendant.* | Civil No. 3: 15-cv-1606(JBA)<br><br>February 9, 2017 |

**RULING ON MOTION FOR SANCTIONS**

In this lawsuit alleging trademark and copyright infringement in the packaging for marshmallow roasting skewers, Defendant Jaccard Corporation ("Jaccard" or "Defendant") moves [Doc. # 121] for sanctions and for expedited consideration on the grounds that Plaintiff This, LLC ("TLLC" or "Plaintiff") failed to timely supplement its interrogatory responses as it stipulated and in violation of the Court's order adopting the Parties' stipulation. Plaintiff opposes [Doc. # 123], arguing that its failure to comply was unintentional, that it has since complied, and that the Court-ordered expedited briefing schedule [Doc. # 122] violated its due process rights. For the reasons set forth below, the Court grants Defendant's motion and imposes sanctions in the form of (i) a mandatory but rebuttable inference that any infringement by Defendant of the TLLC IP asserted in this case was neither willful nor knowing, and (ii) Defendant's costs and reasonable attorneys' fees for its motion and reply.

**I.　Background**

Because the Court's consideration of Defendant's motion and Plaintiff's opposition takes place in the overall context of discovery in this case, a review of the parties' discovery disputes is necessary.

On August 16, 2016, the Court held a conference in anticipation of an evidentiary hearing on motions to dismiss and for preliminary injunction. That same day, the parties resolved the motion to dismiss [Doc. # 51] and agreed to a proposed preliminary injunction order [Doc. ## 52, 54, 55].

On August 30, 2016, the Court held a status conference to discuss scheduling in light of the preliminary injunction and the limited time between discovery closure and the trial-ready date. At that conference, the Court alerted the parties to the need for an expedited discovery schedule in light of the preliminary injunction's burden on Defendant.

On October 17, 2016, the day on which Plaintiff was scheduled to serve its damages analysis, it moved for an eight-week extension of all deadlines and modification to the schedule to instead require its damages analysis at the end of discovery. During the pendency of its motion, the Plaintiff took no action with respect to any of the deadlines in the operative scheduling order. The Court subsequently denied Plaintiff's motion, observing the Plaintiff's failure to timely propound discovery as necessitating the discovery extension it sought and the consequences of the preliminary injunction continuing in force. (*See* Ruling on Motion for Modification of Scheduling Order [Doc. #105] at 5.)

On October 27, 2016, Defendant sought the Court's assistance in the resolution of several discovery disputes [Doc. # 88], including Defendant's allegation that Plaintiff's Objections and Responses to Defendant's Interrogatories failed to conform to the requirements of Fed. R. Civ. P. 33(d). In particular, Plaintiff's Objections and Responses to Interrogatories 1, 3, 4, 5, 6, 7, 12, 13, 14 and 15 interposed a set of boilerplate objections, indicated Plaintiff's willingness to meet and confer, and then stated in response to each interrogatory: "[s]ubject to the foregoing objections and pursuant to Rule 33(c) [sic] of the Federal Rules of Civil Procedure, TLLC respectfully refers

2

Defendant to the documents already produced in this action. TLLC will supplement its response as discovery continues in this action and as further information becomes available."[1] (Ex. A to Muldoon Decl. [Doc. # 121-3] *passim.*)[2] The Court scheduled a status conference for December 14, 2016 to review this and other disputes.

Prior to the status conference, the parties reached a stipulated agreement providing that the Plaintiff would be permitted to supplement its interrogatory responses to conform with Fed. R. Civ. P. 33(d). At the conference, the Parties read their stipulation into the record and Defendant requested that the Court so-order the stipulation "so if there's a problem, we have remedies under rule 37." (Dec. 14 Tr., Ex. B to Def.'s Reply [Doc. # 121-2] at 8.) The stipulation read in pertinent part:

> 4. TLLC agrees that within ten (10) days of [December 14, 2014] it shall serve on Jaccard supplemental interrogatory responses in accordance with Rule 33(d) that identify by Bates number the documents from which the answers to the aforementioned interrogatories can be ascertained.
>
> 5. TLLC agrees that within ten (10) days of [December 14, 2014] it shall serve on Jaccard supplemental document demand responses that identify by Bates number any documents responsive to each of the document demands.

After the conference, the parties promptly filed a written copy of the stipulation they read into the record and the Court adopted and so-ordered the stipulation. However, despite the parties' agreement and the Court's order, Plaintiff served no supplement to its interrogatory responses by

---

[1] Fed. R. Civ. P. 33 was revised in 1993 to divide Subsection (a) into two parts, which became Subsections (a) and (b). Prior to the 1993 revision, Subsection (d) was Subsection (c). Plaintiff apparently means 33(d).

[2] Fed. R. Civ. P. 33(d) provides a party the option of answering interrogatories by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could . . . ."

December 27, 2016 as ordered, only supplemental responses to the document production demands. (Ex. B to Mot. for Sanctions [Doc. # 121-4]; Pl.'s Mem. Opp'n at 3.) On January 3, 2016, Defendant emailed Plaintiff asking why Defendant should not move for sanctions against Plaintiff for violation of the Court's order. (*Id.*) Receiving no response, counsel for Defendant renewed the inquiry via email on January 6, 2017. (Ex. C to Mot. for Sanctions [Doc. # 121-5].) Again receiving no response, on January 13, 2017 Defendant requested that Plaintiff be prepared to discuss why it should not move for sanctions at the meet-and-confer scheduled for Monday, January 16, 2017 prior to the scheduled deposition of Eric Wangler. (Ex. D to Mot. for Sanctions [Doc. # 121-6].)

On the Friday before the deposition, Plaintiff canceled the deposition. On Monday—the day on which discovery was to close—Plaintiff did not appear for the meet-and-confer and, Defendant represents, did not answer three telephone calls or respond to two voicemails left by Defendant. (Ex. G to Mot. for Sanctions [Doc. # 121-9].) After Counsel for Defendant sent a further email to Plaintiff on Tuesday, January 17, 2017 querying his failure to respond to the phone calls, Plaintiff's Counsel emailed, "I home [sic] sick with the flu and thus not available to meet and confer today. I will contact you when I return to work and we can set a time then." (Ex. H to Mot. for Sanctions [Doc. # 121-10].) On January 18, 2017, Defendant filed the instant motion for sanctions for Plaintiff's violation of the schedule to which Plaintiff had agreed and the Court subsequently so-ordered. [Doc. # 121] On Friday, January 20, 2017, four days after the close of discovery, Plaintiff supplemented its interrogatory responses.

## II. Discussion

"A district court has wide discretion to impose sanctions, including severe sanctions, . . . and its ruling will be reversed only if it constitutes an abuse of discretion." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006). Fed. R. Civ. P. 37(b)(2)(A) lists the potential sanctions

which may be imposed on a party who fails to obey an order to provide or permit discovery. The list of permissible sanctions includes "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action . . . ." as well as dismissing the action, prohibiting the sanctioned party from introducing evidence in support of designated claims, striking pleadings, and other possible punishments. Fed. R. Civ. P. 37(b)(2)(A)(i). Likewise, under Rule 16, a "court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . (C) fails to obey a pretrial order." Fed. R. Civ. P. 16(f)(1).

Plaintiff "acknowledges that the supplemental responses . . . were not timely served" (*see* Opp'n [Doc. 124] at 3) and thus devotes most of its opposition to urging a minimal sanction. First, it represents that its failure to comply with the Court's order was unintentional. (Pl.'s Opp'n [Doc. # 123] at 3.) "On December 16, 2016, TLLC timely complied with ¶5 of the Stipulation, serving Defendant with the required supplemental demand response. In doing so, TLLC believed that it was thereby also in compliance with ¶4, the request for supplemental interrogatory responses. More precisely, TLLC believed, and continues to believe in good faith, that creating a separate document to convey the same, easily transferable information was a waste of the parties' time and resources." (*Id.*)

Second, Plaintiff represents that Defendant was only minimally prejudiced by the delay and that it complied with the Court's order on January 20, 2017, "the earliest moment practicable once the initial shortcoming was brought to its attention and the parties' counsel had the opportunity to meet and confer." *Id.*

As both parties note, "[a]s to the required level of culpability warranting sanctions under Fed. R. Civ. P. 37(c), the Second Circuit has stated that a case-by-case approach to the failure to

5

produce relevant discovery is appropriate because such failures occur along a continuum of fault-ranging from innocence through the degrees of negligence to intentionality." *Fossil Indus., Inc. v. Onyx Specialty Papers, Inc.*, 302 F.R.D. 288, 293 (E.D.N.Y. 2014)(*citing Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir.1999)). Plaintiff also urges the Court to consider "the willfulness of the non-compliance; the efficacy of lesser sanctions; the duration of the noncompliance; and whether the non-compliant party was warned that further noncompliance would result in sanctions" in considering whether or not sanctions are appropriate. *Kellogg v. J.C. Penney Corp.*, No. 11-cv-733, 2013 WL 308985, at * 1 (*citing Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010)).

### A. Plaintiff's Supplemental Responses Violate the Federal Rules of Civil Procedure

The stipulated order set a deadline and required that Plaintiff's supplemental responses conform to Rule 33(d). Rule 33(d) does not permit a party to avoid specific responses to interrogatories by reference to undifferentiated masses of documents. Rather, "[t]he provision requires that a party seeking to use alternative means of responding to an interrogatory specify the records from which a response can be ascertained." *New Colt Holding Corp. v. RJG Holdings of Florida, Inc.*, No. 3:02-cv-173(PCD), 2003 WL 22327167, at *2 (D. Conn. June 17, 2003).[3]

---

[3] It is doubtful that the interrogatories propounded by Defendant lend themselves to utilization of the Rule 33(d) response option. "Rule 33 production is suited to those discovery requests requiring a compilation or analysis, accomplished as easily by one party as another, or where neither side has clear superiority of knowledge or familiarity with the documents. Accordingly, Rule 33 is well-suited to reply to inquiries of an intensely objective nature. Rule 33 is not appropriate where interrogatories pose questions of fact or mixed questions of law and fact which require the exercise of particular knowledge and judgment on the part of the responding party." *XChange Telecom Corp. v. Sprint Spectrum L.P.*, No. 14-CV-54 GLS/CFH, 2015 WL 773752, at *5 (N.D.N.Y. Feb. 24, 2015). Defendant's twelfth and thirteenth interrogatories pose such mixed questions of facts and law because they ask the Plaintiff to "identify all facts and

6

The Advisory Committee has twice commented on the option provided by Fed. R. Civ. P. 33(d): In 1970, the Committee noted that "[a] respondent may not impose on an interrogating party a mass of records as to which research is feasible only for one familiar with the records." (Fed. R. Civ. P. 33(d) advisory committee notes to 1970 Amendment.) The Committee then clarified in 1980 that "parties upon whom interrogatories are served have occasionally responded by directing the interrogating party to a mass of business records . . . . Such practices are an abuse of the option." (Fed. R. Civ. P. 33(d) advisory committee notes to 1980 Amendment.)

In response to Defendant's third interrogatory, which requested that Plaintiff "identify the manufacturers of products bearing the Alleged TLLC IP, and for each, identify the costs to TLLC associated with manufacture or acquisition of the products," Plaintiff identified 2,910 pages of documents by Bates range and additionally directed Defendant to another mass of undifferentiated documents: "In addition, TLLC respectfully refers Defendant to the documents made available to Defendant for inspection . . . " (Pl.'s Supplemental Responses to Interrogatories, Ex. B to Def.'s Reply [Doc. 124-3] at 7), which, Defendant represents, comprise twelve bankers' boxes. (*See* Photo of Bankers Boxes, Ex. C to Def.'s Reply [Doc. 124-4].).

While Plaintiff's designation of 2,910 pages by Bates range in response to Defendant's third interrogatory, interpreted charitably, tests the outermost limits of the requirement that a party specify the documents, its designation of twelve bankers' boxes of additional material certainly violates the requirement and abuses the option provided by Fed. R. Civ. P. 33(d). Its designation of those same bankers' boxes in response to multiple other interrogatories compounds Plaintiff's

---

evidence which support TLLC's contention that . . . " thereby requiring the responding party to make a legal judgment about which facts support the contention and how they do so.

7

abuse. Thus, Plaintiff's representation that "[f]or all intents and purposes, the discovery disputes that Defendant claims led to the filing of its Motion for Sanctions were resolved on January 20, 2017" is untrue; by continuing to fail to conform to the requirements of Rule 33(d) for its supplemental responses, Plaintiff's violation of the Court's order is on-going.

### B. Plaintiff Continues to Violate Court Orders

This is the second time that Plaintiff has violated an order of this Court. The first violation occurred when Plaintiff failed to timely serve its expert disclosure under a Court-ordered scheduling order. (*See* Ruling on Motion to Preclude [Doc. # 118].) Despite the untimely disclosure, the Court weighed the importance of testimony from Plaintiff's expert with the other circumstances and denied Defendant's motion to preclude. Plaintiff's second delay not only violates the Court-ordered Stipulation, but also the scheduling order, under which all discovery but expert depositions closed on January 16, 2017, four days before Plaintiff's abusive supplement to its interrogatory responses.

Plaintiff's failure to timely or properly supplement its interrogatory responses appears to be part of a pattern of delay that, paired with the preliminary injunction prohibiting Defendant from selling old stock, works a detriment on Defendant's business.

### C. Plaintiff's Counsel's Candor with the Court

In the Ruling on Plaintiff's Motion for Extension of Time, the Court called into question Plaintiff's counsel's candor to the Court, noting that Plaintiff's motion papers appeared to misrepresent what occurred during a 30(b)(6) deposition. Contrary to Plaintiff's representation that "the witness refused to provide any testimony or documents directed to damages," the deposition transcript and accompanying exhibits contained several pages of discussion of damages and noted the production of sales records. (Ruling on Mot. Extension of Time [Doc. # 105] at 6.)

Similarly, the Court was concerned that Plaintiff's counsel's description of a potential conflict with Harris Beach, newly-hired counsel for defendant, concealed key facts. (*See id.* at 7 for description.)

The Court has similar concerns about Plaintiff's candor in the instant dispute. Plaintiff explains its failure to serve supplemental interrogatory responses by claiming it would have been duplicative because the interrogatory responses would contain nothing more than "the same, easily transferable information" called for in the Defendant's document demands, but this does not appear to be the case.

A comparison of Defendant's Document Demands with its Interrogatories reveals that, while there is some overlap in subject matter, there are interrogatories that have no corresponding document demand and there are interrogatories that pose mixed questions of fact and law that cannot be answered by reference to a list of Bates-numbered documents.[4]

As an example of document demands and interrogatories that overlap but are better suited to separate responses, Document Demand 14 requests "all Documents and Communications concerning the assembly, production, and manufacture of products bearing the Alleged TLLC IP." Plaintiff identified 2,910 pages of documents by Bates number in its supplemental response to this request. These documents presumably contain the answer to Interrogatory Number 3, which requests Plaintiff to "identify the manufacturers of products bearing the Alleged TLLC IP, and for each, identify the costs to TLLC associated with the manufacture or acquisition of the products." Instead of providing a prose answer or a table setting out manufacturers and costs, Plaintiff's Supplemental Responses identified the same block of 2,910 pages of documents as well as 57 additional pages (TLLC 9193 – TLLC 9204 and TLLC 9227 – TLLC 9273) and in addition referred

---

[4] The parties' Supplemental Responses to Document Demands and the Supplemental Responses to Interrogatories to the Court will be docketed to ensure a complete record.

Defendant to twelve bankers boxes of invoices. This response is an obvious abuse of the option provided by Rule 33(d) and reflects Plaintiff's mischaracterization of the state of discovery.

Other interrogatories that do not have corresponding document demands make it impossible for the "same, easily transferable" information to be used in response. For example, the Court finds no request for production of documents that corresponds to Defendant's Interrogatory 14, which requires Plaintiff to "identify all facts and evidence which supports TLLC's contention that 'Defendants . . . have knowingly and willfully used and continue to use the TLLC IP on, in and in connection with Defendants' advertisement, offer for sale and sale of the Infringing Products, through traditional brick and mortar channels of trade and their operation and maintenance of Defendant's Web-Sites' as alleged in ¶ 40 of the Complaint." Plaintiff's assertion that answering this interrogatory would be duplicative of its responses to the document demands misrepresents the contents of both the document demands and the interrogatories.

**D. Sanctions**

In determining the propriety of sanctions, the Court weighs the factors discussed above in *Kellogg* and *Fossil Industries*. Despite Plaintiff's protestation that its omission was unintentional, its course of conduct could not have been unintentional and appears willful. As well, prior modest sanctions imposed have not been efficacious, weighing in favor of harsher sanctions.[5] At a minimum, violation lasted from December 27, 2016 to January 20, 2017, and then Plaintiff served non-compliant supplemental responses. Finally, while the Court has not expressly warned Plaintiff

---

[5] The Court has attempted use of lesser sanctions in the past for Plaintiff's violation of Court-ordered scheduling orders. In ruling on Defendant's Motion to Preclude, the Court ordered that Plaintiff bear the costs of the expert's travel and expenses to the deposition location, but this sanction did not deter Plaintiff from again ignoring court-ordered deadlines.

that further discovery abuse would result in further sanctions, it has repeatedly informed Plaintiff of the need for discovery diligence as long as the Defendant remains under an injunction order.

Defendant has requested that the Court instruct the jury to draw an adverse inference from Plaintiff's response to Interrogatory 14, asking Plaintiff to "identify all facts and evidence which supports TLLC's contention that 'Defendants . . . have knowingly and willfully used and continue to use the TLLC IP on, in and in connection with Defendants' advertisement, offer for sale and sale of the Infringing Products . . . .'" There is no document request that corresponds to this interrogatory, so Plaintiff's failure to supplement its response to this interrogatory leaves it unanswered and Defendant's proposed sanction is an appropriate middle ground within the range of sanctions permitted by Fed. R. Civ. P. 37(b)(2)(A).

There are three kinds of adverse inference: an instruction that certain facts are deemed admitted and must be accepted as true; a mandatory but rebuttable presumption, and a permissive adverse inference which a fact finder may, but is not required, to draw. *See Pension Committee of University of Montreal Pension Plan v. Banc of America Securities*, 685 F. Supp. 2d 456, 470 (S.D.N.Y. 2010) *abrogated on other grounds by Chin v. Port Auth. of N.Y. & New Jersey*, 685 F.3d 135 (2d Cir. 2012).

Given the willfulness of Plaintiff's conduct and in the face of a prior, lesser sanction, a mandatory rebuttable presumption is appropriate for further proceedings in this case. At trial, the jury will be instructed that absent Plaintiff's rebuttal evidence, it should infer that any infringement it finds was neither willful nor knowing.[6]

---

[6] This is a case sounding in copyright and trademark infringement. "Because the Lanham Act is a strict liability statute, a registrant need not prove knowledge or intent in order to establish liability." *Procter & Gamble Co. v. Quality King Distrib., Inc.*, 123 F.Supp.2d 108, 113

11

### III. Plaintiff's Due Process Rights Have Not Been Violated

Defendant filed its motion for sanctions and expedited consideration on January 18, 2017. That same day, the Court ordered that "any opposition to Defendant's Motion for Sanctions and Expedited Consideration must be filed by close of business on Monday, January 23, 2017." [Doc. # 122] Although Plaintiff timely filed its opposition, it contends that its due process rights have been violated by the accelerated briefing schedule on the motion for sanctions: "[r]eceiving notice of a motion for sanctions on January 18, 2017 and being expected to submit a hurried opposition two business days later" does not give Plaintiff "a chance to defend itself against specific charges." (Opp'n at 6.)

Plaintiff primarily relies on *U.S. v. Seltzer*, 227 F.3d 36 (2d Cir.) for the proposition that a party must be given a chance to be heard on a matter and that it must be given a chance to defend itself against specific charges. However, in *Seltzer*, the sanctions were summarily issued from the bench minutes after the purported infraction occurred and the judge did not make clear what order

---

(E.D.N.Y.2000). *Id.*; *see also Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 25 (2d Cir.2004). Like trademark infringement, copyright infringement is a strict liability offense, meaning "intent or knowledge is not an element of infringement." *Fitzgerald Publ'g. Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1113 (2d Cir.1986). However, both the Lanham Act and the Copyright Act provide for enhanced statutory damages for willful or knowing infringement. "Statutory damages for the non-willful infringement of registered trademarks are available from $1,000 to $200,000 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). In cases of willful infringement, a plaintiff may recover enhanced statutory damages of "not more than $2,000,000" per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(2)." *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 164 (E.D.N.Y. 2016). The Court's sanction will require Plaintiff to mount specific evidence to overcome the mandatory inference that any infringement was neither knowing nor willful.

12

Attorney Seltzer violated or provide her any chance to make a complete record. The Second Circuit noted that the District Court failed to inform Ms. Seltzer of the grounds on which it based its decision (including, apparently, information communicated from the clerk to the judge but not recorded on the transcript and not articulated to Attorney Seltzer). Here, by contrast, Plaintiff had been notified of the sanctionable conduct since January 3, 2017 and was given four calendar days to respond to the motion for sanctions. Defendant's motion sets out with specificity the grounds for the request. Plaintiff had adequate opportunity to respond.

*U.S. v. Seltzer* also discusses the Second Circuit standard where costs and attorneys' fees are assigned under the court's inherent authority, requiring an explicit finding of bad faith. (*Id.* at 40.) However, Fed. R. Civ. P. 37(b) explicitly allows that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Plaintiff has made no such showing; indeed, it did not oppose the request for attorneys' fees in its opposition.

### IV. Conclusion

For the foregoing reasons, Defendant's motion for sanctions and expedited discovery is GRANTED. Plaintiff is ordered to supplement its non-compliant interrogatory responses with compliant responses by February 16, 2017, the enlarged date for close of all discovery. The jury will be instructed that it is required to infer that any infringement of Plaintiff's products was neither willful nor knowing absent rebuttal evidence. Plaintiff and Plaintiff's counsel are ordered to jointly bear Defendant's costs and expenses, including attorneys' fees, of preparing the instant motion and reply. Defendant shall submit its documentation of fees and costs in 10 days.

IT IS SO ORDERED.

　　　　　　　　　/s/　　　　　　　　　　　　　　
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 9th day of February 2017.